**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **GUY M. DOMAI,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:17-cv-872-JNP-BCW** |
| **BRIGHAM YOUNG UNIVERSITY,** | **District Judge Jill N. Parrish** |
| **Defendant.** | **Magistrate Judge Brooke C. Wells** |

This matter is referred to the undersigned from District Judge Jill N. Parrish in accordance with 28 U.S.C. § 636(b)(1)(B).[1] On August 9, 2017, the Court granted Guy M. Domai's ("Plaintiff") application for leave to proceed *in forma pauperis* and waived the prepayment of filing fees under 28 U.S.C. § 1915 ("IFP Statute").[2] Accordingly, the Court screens Plaintiff's Complaint as required by the IFP Statute.[3] In addition, because Plaintiff is proceeding pro se in this case, the Court will construe his pleadings liberally.[4]

## BACKGROUND

The facts are taken from Plaintiff's Complaint. Plaintiff asserts he has been repeatedly harassed by students at Brigham Young University ("BYU"), as well as by several BYU police

---

[1] Docket no. 4, docket no. 6.

[2] Docket no. 2.

[3] *See, e.g.*, *Lister v. Dep't of the Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005).

[4] *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

officers.  Specifically, Plaintiff contends that on July 31, 2016, he was "working on his cases" at the Wilkinson Student Center on the BYU campus when he was approached by two BYU campus police officers.[5]  The officers explained they had received a call informing them that Plaintiff was taking pictures of people in the cafeteria.  The officers requested that Plaintiff provide his phone or he would "be taken away."[6]  Plaintiff informed the officers the report they received was false and that they had no basis to look through his phone or remove him from campus.  Plaintiff alleges the officers became verbally aggressive with him and insisted that he provide identification.  He refused and informed the officers that he intended to file a complaint against them.  Plaintiff immediately went to the BYU police station to file a written complaint against the two officers and a request for an investigation into the identity of the caller who reported him to police.

Several weeks prior to the July 31st incident, Plaintiff asserts he had a conversation with Officer Christiansen of the BYU Police Department, who had been called to the cafeteria by an anonymous source.  The caller reported that Plaintiff was sitting in one of the corners of the cafeteria and that "he was suspicious."[7]  Plaintiff states he informed Officer Christiansen of previous harassment by students.  Plaintiff contends that when Officer Christiansen instructed him to simply call campus police next time he is harassed, Plaintiff expressed his reluctance to do so because the campus officers have previously accused him of harassing students.

_____

[5] Docket no. 3 at 10.

[6] *Id.*

[7] *Id.* at 11.

Plaintiff alleges that a mere two weeks after that encounter with Officer Christiansen, Plaintiff was "kicked out" of the Wilkinson Student Center.[8]  Plaintiff states he was able to work without interruption for five hours until a group of students arrived who appeared to be doing "some sort of martial arts exercises" on the first floor of the building.[9]  He alleges that the students began speaking loudly to Plaintiff from downstairs, telling him he will never have the chance to finish his cases because "they will do everything to stop him."[10]  He further alleges that "Federal Justice Furse . . . was named and a comment was associated to her saying that [s]he will never hear [his] cases."[11]  Plaintiff also states that he "calmly" told them to stop but they failed to do so.[12]  Plaintiff contends the students began making comments about his cases and his personal projects; and, during this taunting, the students even named his ex-girlfriend.

Plaintiff states that he then spoke with the "leader" of the "Jui Jitsu group" and requested that she and her group stop harassing him but she denied any wrongdoing.[13]  Plaintiff alleges that one of the male students became verbally aggressive toward Plaintiff.  Plaintiff asserts that he went back upstairs to work on his cases and to prepare a written complaint about the harassment.

Plaintiff contends that thirty minutes later, three campus police officers arrived.  One of the officers, Officer Lenny, advised Plaintiff that he and the other two officers were responding

---

[8] *Id.*

[9] *Id.* at 12.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

to a call made from a student inside the building who complained that Plaintiff was harassing

them.  Plaintiff explained to the officers that he had not been harassing anyone but rather he was

the victim of harassment.  After speaking with the students, Officer Lenny ordered Plaintiff to

leave the premises because the students stated that Plaintiff was harassing them.  Plaintiff told

Officer Lenny that he did not have the authority to remove Plaintiff from campus, especially

when Plaintiff was the victim.  Officer Lenny allegedly informed Plaintiff that because BYU is

private property and Plaintiff is not a student or staff member, he could require Plaintiff to leave

campus.  Plaintiff then told Officer Lenny that he was "out of his mind," "crazy," and "full of it

to try to impose their legendary trespass ban" on Plaintiff.[14]  Plaintiff states that Officer Lenny

became more aggressive and ultimately placed Plaintiff on a 24-hour trespassing ban.  Plaintiff

left campus with the three officers following closely.

       While the timeframe is not entirely clear from Plaintiff's Complaint, Plaintiff went to the

police station to fill out a form seeking an investigation into the allegedly false reports about

him, and while he was there, he asked to speak with another officer to file a "verbal complaint"

about the three officers.[15]  He was referred to the officers' supervisor, Lieutenant Lemmon.

Plaintiff states he informed Lieutenant Lemmon that he was on campus to work on his cases and

that students regularly make false accusations against him in an attempt to have him removed

from campus.  Plaintiff explained to Lieutenant Lemmon that Officer Christiansen's advice to

call campus police whenever students were harassing him had backfired.  Plaintiff cautioned

---

[14] *Id.* at 13.

[15] *Id.* at 14.

Lieutenant Lemmon that if the students and police officers continue to plot against him, he would be forced to file a lawsuit against BYU.

Plaintiff asserts Lieutenant Lemmon advised Plaintiff that because he had "become a nuisance on . . . campus causing trouble everywhere he went," BYU was permanently banning Plaintiff from campus.[16]  Lieutenant Lemmon also notified Plaintiff that he would be "incarcerated if he comes back on campus."[17]  Plaintiff told Lieutenant Lemmon that banning Plaintiff from campus was racist (because Plaintiff is presumably African-American)[18] and that Lieutenant Lemmon should be "ashamed."[19]  Lieutenant Lemmon informed Plaintiff that he was not being banned based on his race, rather because BYU is a private university, it can remove people from campus for any reason.

## LEGAL STANDARDS

Whenever the Court authorizes a party to proceed without payment of fees under the IFP statute, it is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."[20]  In determining whether a complaint fails to state a claim for relief under the IFP statute, the Court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6) of the Federal

---

[16] *Id.* at 15.

[17] *Id.*

[18] *Id.* at 14 (alleging that the officers were trying to "pull the 'here is [sic] criminal black man that we are removing from the campus' scene").  This is the only reference in Plaintiff's Complaint to his race.

[19] *Id.* at 15.

[20] 28 U.S.C. § 1915(e)(2)(B)(ii).

Rules of Civil Procedure.[21]  Under this standard, the Court "look[s] for plausibility in th[e] complaint."[22]  More specifically, the Court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[23]

In undertaking this analysis, the Court is mindful that Plaintiff is acting pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[24]  At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[25] and it "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[26]  Further,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which

---

[21] *See Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

[22] *Id.* at 1218 (quotations and citations omitted) (second alteration in original).

[23] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other quotations and citation omitted) (second and third alterations in original).

[24] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also, e.g.*, *Ledbetter*, 318 F.3d at 1187.

[25] *Bellmon*, 935 F.2d at 1110.

[26] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

relief can be granted.  Moreover, in analyzing the sufficiency of the
plaintiff's complaint, the court need accept as true only the
plaintiff's well-pleaded factual contentions, not his conclusory
allegations.[27]

With these standards in mind, the Court turns to the sufficiency of Plaintiff's Complaint under

the IFP Statute.

## ANALYSIS

Plaintiff filed this action under 42 U.S.C. § 1983 alleging that BYU, presumably through

Lieutenant Lemmon,[28] permanently and unilaterally banned him from campus without probable

cause or due process of law.  Section 1983 does not create specific rights; rather, it "provides a

mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured

by the Constitution and laws of the United States."[29]  Thus, to assert a cause of action under

section 1983, Plaintiff's Complaint must set forth both of the following elements:  (1) "the

existence of a federally-protected right" and (2) "the deprivation of that right by a person acting

under color of state law."[30]  Plaintiff's first cause of action[31] alleges that BYU deprived him of

---

[27] *Bellmon*, 935 F.2d at 1110 (citations omitted).

[28] Plaintiff filed a nearly identical lawsuit against Lieutenant Lemmon that this court will address
in a separate and subsequent Report and Recommendation.  *See Domai v. Lemmon*, Case No.
2:17-cv-00869-TS-BCW (filed Aug. 1, 2017).

[29] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

[30] *Wittner v. Banner Health*, 720 F.3d 770, 773 (10th Cir. 2013).

[31] Docket no. 3 at 19.

due process under the First Amendment and/or Title II of the Civil Rights Act of 1964.[32]

Plaintiff's second cause of action alleges a claim against BYU for "abuse of process."[33]

The undersigned concludes that Plaintiff's Complaint fails to establish either element of a § 1983 claim. First, Plaintiff has not demonstrated that he has a constitutional right of access to BYU's campus, including the Wilkinson Student Center. Plaintiff has not asserted that he is a student or staff member of BYU, nor does Plaintiff otherwise identify the source of his purported entitlement to BYU's grounds or facilities. Plaintiff has not properly alleged he was searched or arrested; rather, Plaintiff was banned from BYU, a private university. Moreover, BYU is not a place of public accommodation as Plaintiff alleges. While 42 U.S.C. § 2000a protects an individual's "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin," BYU, as a private university, does not meet the statutory definition of a "place of public accommodation."[34] Thus, Plaintiff has failed to allege any facts demonstrating that BYU violated any right "secured by the Constitution and laws" of the United States.[35]

Nor has Plaintiff alleged that BYU is a state actor for purposes of § 1983. "In order to allege that private conduct is 'fairly attributable to the state,' the complaint must show that the

---

[32] 42 U.S.C § 2000a (prohibiting discrimination in public accommodations).

[33] Docket no. 3 at 22.

[34] 42 U.S.C. § 2000a(b) (listing places of public accommodation, such as hotels, restaurants, and places of entertainment).

[35] 42 U.S.C. § 1983.

private party is 'a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"[36]  Under *Monell v. Department of Social Services*[37] and its progeny, a municipal government, as well as a private entity, cannot be held vicariously liable for the alleged wrongdoing of its employees; "'in other words, [BYU] cannot be held liable under § 1983 on a *respondeat superior* theory.'"[38]  However, municipal – as well as private – entities acting under color of state law may be subject to liability under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."[39]  Plaintiff must show a "direct causal link between a . . . policy or custom and the alleged constitutional deprivation."[40]  Plaintiff has not alleged that BYU has an official policy, custom, or practice that infringed on his rights.

In addition, Plaintiff's claims for abuse of process also fail as a matter of law.  "Abuse of process applies to one who uses a legal process against another primarily to accomplish a

---

[36] *Walton v. U.S. Bank*, No. 2:09-cv-931, 2010 WL 3928507, *2 (D. Utah Oct. 4, 2010) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

[37] 436 U.S. 658 (1978).

[38] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (quoting *Monell*, 436 U.S. at 691).

[39] *Monell*, 436 U.S. at 690.

[40] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

purpose for which it is not designed."[41]  "To establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings."[42]  "To satisfy the 'wilful act' requirement, a party must point to conduct independent of legal process itself that corroborates the alleged improper purpose."[43]  Plaintiff has not demonstrated that BYU utilized any legal process against him or did so with an improper purpose or ulterior motive.  In fact, he has not identified any lawsuit or proceeding that was brought against him by BYU.  Because "the initiation or continuation of 'civil proceedings' is required as an element of this cause of action,"[44] this claim fails as well.

The Court has liberally construed Plaintiff's Complaint and concludes that Plaintiff has failed to provide enough well-pleaded factual allegations to support his alleged claims for relief. Thus, Plaintiff's current Complaint fails to state claims upon which relief can be granted. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."[45]  Here, even under a broad reading of Plaintiff's Complaint, the

---

[41] *Garth O. Green Enterprises, Inc. v. Harward*, No. 2:15-CV-00556-DN-EJF, 2017 WL 1184024, at *11 (D. Utah Mar. 29, 2017) (quoting *Hatch v. Davis*, 102 P.3d 774, 782 (Utah Ct. App. 2004) (hereinafter, "*Hatch I*")).

[42] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (citing *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006) (hereinafter, "*Hatch II*")).

[43] *Hatch II*, 147 P.3d at 390 (quoting *Hatch I*, 102 P.3d at 782).

[44] *Foster v. Saunders*, No. 20040527-CA, 2005 WL 1346799, *1 (Utah Ct. App. June 9, 2005) (quoting Restatement (Second) of Torts § 674).

[45] *Kay*, 500 F.3d at 1217 (quotations and citation omitted).

undersigned finds it is obvious that Plaintiff cannot prevail on the alleged facts.  Thus allowing an opportunity to amend would be futile and a waste of precious judicial resources.[46]

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint be dismissed for failure to "state a claim on which relief may be granted."[47]

## NOTICE

Copies of this Report and Recommendation are being sent to Plaintiff who is hereby notified of his right to object.[48]  Within fourteen (14) days after being served with a copy, Plaintiff may serve and file written objections to such proposed findings and recommendations as provided by rules of Court.  Any objection must be filed within this deadline. Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 17 April 2018.

Brooke C. Wells
United States Magistrate Judge

---

[46] *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989) (noting the function of § 1915(d) that provides "authority to dismiss a claim based on an indisputably meritless legal theory, [and] the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("a court may dismiss sua sponte 'when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'") (quoting *McKinney v. State of Okl., Dept. of Human Services, Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991)).

[47] 28 U.S.C. § 1915(e)(2)(B)(ii).

[48] *See* 28 U.S.C. § 636(b)(1).